Case 83.—ACTION BY O. H. CHENAULT AGAINST MARY B.
CLAY TO RECOVER LAND, OCT., 23.

## Clay v. Chenault.

Appeal from Madison Circuit Court.

J. M. BENTON, Circuit Judge.

Judgment for Plaintiff. Defendant appeals. Af-
firmed.

1. Wills—Construction—Estate Created—Vested Equitable Es-
   tate—Divesting.—A w.ll give to a son, S., "as trustee, the
   fee simple" of certain land "upon the following trust, to-wit:
   That he permit my son C. to use * * * said tract of land
   during his natural life, and at his death to convey said estate
   to his children, but should my son C. die without issue, the
   land shall be conveyed to my son B." Held, to convey the
   naked legal title to S., a' life use 'to C., and an equitable
   fee to C.'s children, subject to be divested by their death
   before that of their father.
2. Deeds—Estate Conveyed—Defeasible Fee.—One purchasing an
   equitable fee subject to be divested by the death of the grantor
   prior to that of the life tenant, takes subject to such con-
   tingency.
3. Estoppel—By Deed—Partition.—Each of six children holding
   an equitable fee under a will, providing that on' the death
   of their father, the life tenant, the land should be conveyed
   "to his children," but that, should their father die "without
   issue," the property should be deeded to another, conveyed
   to the others his rights in the others' one-sixth interest, so
   that each should hold free from all contingencies of the others.
   One of the children subsequently deeded his one-sixth interest,
   and died before the father. Held, that a child so conveying
   to the others was estopped from claiming any interest in the
   one-sixth interest deeded away by the child who died.

JOHN T. SHELBY, for appellee.

Clay v. Chenault.

## PROPOSITIONS AND AUTHORITIES.

1. Under a devise to a trustee to hold for the use of C. for life, and at his death to convey to the latter's children, with a limitation over in the event of the life tenant's death without leaving issue, the first child of C. took, when born, a vested remainder, which opened to let in the afterborn children; and the remainder interests so vested, were defeasible only in the event of the death of the life tenant without leaving issue:

(Phillips v. Johnson, 14 B. Mon. 172; Fort Jefferson Improvement Co. v. Duypoyter, 103 Ky. 792; Herrington v. Gibson, 109 Ky. 752; Middleton v. Middleton, 19 K. L. R. 1232, 43 S. W. 677; Mercantile Bank v. Ballard's Assignee, 83 Ky. 481.)

2. Even if the share of Green Clay (one of the life tenant's children) in the remainder was one defeasible upon his dying before his father, with a limitation thereof over to his brothers and sisters in such event, then the contingent or executory interest which appellant had in such share was one capable of sale and conveyance and passed by her deed in 1876:

(4 Kent 261; Birney v. Richardson, 5 Dana 429-30; Graves v. Spurr, 97 Ky. 654.)

3. But even if Green Clay's share in the remainder was defeasible in the event of his dying before his father and the interests, if any, of his brothers and sisters in same were such that they could not be conveyed by the deed of 1876 and said share became vested in the latter upon the death of the life tenant, yet immediately upon his acquisition the interest of each passed by virtue of the warranty in that deed, which operated by way of estoppel, to the appellee claiming as a purchaser under Green Clay:

(Aldridge v. Kincaid, 2 Litt. 390; Morrison's Excrs. v. Caldwell, 5 Mon. 433; Griffith v. Houston, 7 J. J. M. 386.)

F. H. CLAY and J. TEVIS COBB, for appellant.

## THE QUESTION OF ESTOPPEL.

The doctrine of estoppel is nothing more than the common sense rule that one may not be inconsistent. If defendant had warranted that Green Clay would get his one-sixth share of the estate she could not now deny the sale to plaintiff. But she manifestly could do no such thing. Her warranty was merely that if Green Clay came into his share she would lay no claim to it. And this was on the clear understanding that it was presumed he was to come into his estate; for it is clear that she intended to part with nothing herself, as she gained nothing, by the deed of 1876. At the time of the deed she expected one-sixth of the estate; but

she afterward acquired another one-thirtieth of it. Warranty does not estop as to after acquired estates. (Locke v. White, 89 Ind. 492). Nor does a release bind or transfer future or contingent estates; it acts only on the estate which the grantor actually had at the time of the release. (Jackson v. Hubble; 1 Cowen, 613 and other cases cited by Kent at p. Vol. II.)

OPINION BY JUDGE NUNN—Affirming.

In the year 1828, Gen. Green Clay, a resident of Madison county, Ky., made his last will and testament; so much of which as is pertinent to a discussion of the issue involved on this appeal being as follows: "I give to my son, Sidney Payne Clay, as trustee, the fee simple of the tract of land on which I live, containing about 2,000 acres,  * * *   upon the following trust, to-wit: That he permit my son, Cassius Marcellus Clay, to use, occupy and enjoy said tract of land during his natural life, and at his death to convey said estate to his children. But should my son, Cassius, die without issue, the land shall be conveyed to my son, Brutus, if living," etc. The proceeds of the sale of an interest in 450 acres of the 2,000-acre tract named in the will is the subject of this controversy.

At the time of his death in 1903, Cassius Marcellus Clay left, surviving him, five children (the appellant, Mary B. Clay, being one of them); another child, Green Clay, having died without issue several years before. In the year 1876 the six children made and executed the following deed: "This indenture made this third day of January in the year 1876 between Green Clay, of the first part, Brutus J. Clay, Jr., of the second part, Mary C. Herrick, of the third part, James Bennett and Sallie Bennett, his wife, of the fourth part, Laura Clay, of the fifth part, and Annie Clay, of the sixth part, witnesseth: Whereas the above six parties are jointly entitled to a contingent remainder upon and after the life estate of Cassius M. Clay, of whom said six parties are the children,

and each child (except James Bennett, the son-in-law) is entitled to an undivided sixth of said remainder in the tract of land containing three hundred and fifty acres, be the same more or less, situated in Madison county, Kentucky, on the waters of Jack's creek, being the tract of land on which said Cassius M. Clay now resides, and which was the homestead of General Green Clay, deceased, under whose will and testament said tract is held and owned, and the said six children desire to make the interest of each child in said remainder a vested and absolute interest of one-sixth each free from the contingent rights of each and all the other children therein: Now to carry said object into effect, and in consideration of the mutual grants and releases which each child by this conveyance receives from the other, each of said six parties do hereby grant, release and convey to each of the other five parties, all of his or her rights, interests and expectancies in and to each of five-sixths of said contingent remainder held by each of said five parties; so that each of said parties shall hold his or her undivided sixth in said remainder in said tract of land free of all rights or claims or contingencies of the other five parties. And each party doth warrant and defend against himself or herself and against claiming under them respectively, the rights, claims and contingencies herein granted, released and conveyed, to the respective grantees thereof.'' 'After this deed was made and recorded, Green Clay sold and conveyed his one-sixth interest in the land to Louney Clay, by whom it was sold to the appellee, O. H. Chenault, in the year 1897. After the death of Cassius Marcellus Clay, the parties in interest, with the exception of appellant, desired to make a sale of the land, but, on account of a disagreement between the appellee and the appellant (the latter claiming that Chenault had no interest therein, and that she was the owner of the one-fifth of the land), were

unable to do so, and they thereupon entered into the following agreement with the appellee: ''Whereas O. H. Chenault, representing Louney Clay's interest in the tract of land known as 'White Hall,' that portion in possession of C. M. Clay at the time of his death, agrees by this instrument to unite with all of the five children or heirs, in making a general warrantee deed, to the aforesaid property when sold: Now we, Sally C. Bennett, B. J. Clay, Laura Clay and Ann C. Crenshaw, agree that the aforesaid O. H. Chenault shall have one-sixth portion of the proceeds of the aforesaid land, so far as we are concerned, leaving him and Mary B. Clay to litigate as to her and his interest, if necessary. The aforesaid S. C. Bennett, B. J. Clay, Laura Clay and A. C. Crenshaw are not to be made parties to any suit that may occur between Mary B. Clay, or her heirs, and O. H. Chenault and his heirs, and are not to be put to any expense on account of same. One-fifth of the proceeds of sale of land shall be paid M. B. Clay at the time of sale. Richmond, Ky., Sept. 22, 1903.'' This action was instituted by the appellee to recover of the appellant his part of the difference between one-fifth and one-sixth of the proceeds of the land which it is alleged she received in excess of what she was legally entitled to, namely, $933.50. Upon the trial of the case in the lower court, judgment was rendered in favor of the appellee, from which the appellant has appealed.

It is contended by the appellee that Green Clay took, under his grandfather's (Gen. Green Clay's) will, a vested remainder in the land, and therefore was authorized to sell it, and could convey a good title to the purchaser. In our opinion, by the will of Gen. Green Clay, the dry legal title to the land passed to the trustee, Sidney Payne Clay; the life estate, or use, to Cassius Marcellus Clay; and the equitable fee vested in the children of the latter as

they came into being, subject to be divested, how-
ever, upon their death before that of their father, the
life tenant.  See the case of Mercantile Bank of New
York v. Ballard's Assignee, 83 Ky. 481, 7 Ky. Law
Rep. 478, 4 Am. St. Rep. 160, and many authori-
ties therein cited.

In view of this construction of the will, it follows
that, when Green Clay conveyed a sixth interest in
the land to Louney Clay, he held an interest therein
which was the subject of a sale; but the purchaser
took it subject to be deprived thereof in the event his
vendor died before the life tenant, his father, which
event actually happened, and, as appellee therefore
received and owns no interest in the land or its pro-
ceeds by his purchase from Louney Clay, his action
to recover the fund sued for should be dismissed,
unless the appellant, by her deed to Green Clay in
1876, is estopped from claiming and holding it.  By
the deed in question, she and her five brothers and
sisters conveyed to each other, in consideration of
mutual grants and releases, their rights or interests
in the other's one-sixth interests, so that each should
hold his or her one-sixth interest in the tract of land
free from all rights or contingencies of the others,
and each warranted the title of the others against
himself or herself in the usual form.  It is true, these
children, by this deed or other instrument, did not,
and could not, avoid or prevent the defeasance pro-
vided in the will of Gen. Green Clay; but, in our opin-
ion, the appellant is estopped by this deed from
claiming any interest in the one-sixth which she, to-
gether with the others, conveyed to her brother,
Green Clay, thereby giving him the power to sell and
convey it so far as she was concerned, and forever re-
linquishing all claims thereto.  Without this deed,
the purchaser, Louney Clay, and his vendee, the ap-
pellant, would have lost the property, as Green Clay
died before his father; but as the brothers and sisters

(the appellant, as said before, being one of them) took the whole upon their father's death, and they having conveyed this interest when they had a title subject to defeasance, but afterwards acquired a complete title, the appellant is now estopped from asserting claim to it.    3 Washburn on Real Property, § 1929; Massie v. Sebastian, 4 Bibb, 436.    In the cases of Sale v. Crutchfield, 8 Bush, 645, and Jackson v. Jackson, 58 S. W. 423, 597, 22 Ky. Law Rep. 536, it was held that a conveyance, by a contingent remainderman with warranty, passed the title as against him.    If one may be estopped from claiming land by orally telling the purchaser to buy it, as has been held, certainly he should be estopped when, by his warranty deed, he solemnly holds out the grantor as having the power and right to sell and convey.    Morrison's Ex'r v. Caldwell, 5 T. B. Mon. 435, 17 Am. Dec. 84; Beard v. Griggs, 1 J. J. Marsh, 27; Churchill v. Terrell, 1 Bush, 54.

For these reasons, the judgment of the lower court is affirmed.